UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JANET MOKRIS,

       Plaintiff,

v.                     Case No:  2:20-cv-34-JES-MRM

UNITED STATES OF AMERICA,

       Defendant.

_____

## OPINION AND ORDER

This matter comes before the Court on the following three motions: (1) Defendant United States of America's (Defendant or USA) Motion for Summary Judgment (Doc. #42); (2) Plaintiff Janet Mokris' Amended Motion for Judicial Notice (Doc. #43); and (3) Defendant's Motion in Limine to Preclude Expert Testimony of William J. Fischer (Fischer) (Doc. #47).  Responses and Replies were filed.  (Docs. #44, 46, 48, 52, 56, 59, 60.)  For the reasons set forth below, the Amended Motion for Judicial Notice is granted in part and denied in part; the Motion in Limine is denied; and the Motion for Summary Judgment is denied.

### I.

Plaintiff Janet Mokris' (plaintiff or Mokris) Amended Complaint (Doc. #19), the operative complaint, sets forth one claim of premise-liability negligence against the USA pursuant to the Federal Tort Claims Act (FTCA).  This claim arises from plaintiff's

slip and fall at the Cape South branch office of the United States Postal Service in Cape Coral, Florida.  For summary judgment purposes the Court adopts Defendant's statement of material facts (Doc. #42, pp. 1-5):

> 1.   Plaintiff Janet Mokris is a 61-year-old resident of Cleveland, Ohio.  From approximately May 23-30, 2018, she and her longtime boyfriend Greg Hammond were visiting Cape Coral, Florida, where Mokris owns a home.
>
> 2.   U.S. Postal Service Lead Clerk Donna Graf opened Cape South's retail operations to the public on May 26, 2018 at 10:00 a.m.  When Graf opens Cape South she does a sweep to check the floors and make sure there is no debris or anything that would cause a danger.  Graf's inspection includes the area adjoining the double doors leading to the exterior of Cape South.  During her inspection Graf did not observe any pooling of water at the entrance area of Cape South.
>
> 3.   It would be unusual if a mat at the entrance of Cape South were more than six inches from the entrance, and it is something Graf likely would have noticed.  Graf does not recall the mat being more than six inches from the entrance at Cape South on May 26, 2018.
>
> 4.   The dimensions of the floor tile inside the entrance area adjoining the exterior double doors of Cape South are approximately 12 inches (length) x 12 inches (width).
>
> 5.   On May 26, 2018, Hammond and Mokris drove to Cape South, where Mokris intended to mail a letter.  They arrived sometime from 10:00 a.m. to 10:15 a.m.
>
> 6.   According to Mokris, as she entered the building her left foot slipped on the floor near the entrance, causing her to fall on her left knee, left forearm, and right hand.

7.   Mokris testified in her deposition that she saw a pool of water where she slipped. Deposition Exhibit 6A depicts an outline of where Mokris asserts the pool of water was located. Deposition Exhibit 6A also contains an "X" where Mokris contends her knee hit the floor.   Mokris's best estimate is that her knee went down where her foot was planted.



8.   After a couple seconds, Mokris stood up again and leaned against a wall.  Hammond, who had watched Mokris fall, also entered Cape South.   Mokris and Hammond then entered the main part of Cape South, where Mokris found a bench to sit on.

9.   Immediately after Mokris sat down, Hammond left to take photographs.  Hammond took photographs of the entrance area approximately two to ten minutes after the fall.

10.  Postal Service employees Donna Graf and Sarah Revere were working at Cape South when Mokris fell.  Graf was working at the window; Sarah Revere did not interact with Mokris or have any information about the incident.

11.  Graf saw Mokris and Hammond in the main lobby and asked Mokris if she was ok.  Mokris stated she had slipped and fallen in the front lobby.  Graf asked Mokris if she needed an ambulance.  Hammond replied that Mokris didn't need an ambulance, and Mokris agreed.

12. In her deposition, Mokris claimed the postal employee she spoke with agreed the floor was wet. Graf denies agreeing with any such statement. According to Mokris, the employee did not look at the entrance and was not able to see the entrance from where she was standing. Mokris testified that she did not know how the employee would have known the floor was wet.

13. Photographs taken of the Cape South entrance area within two to ten minutes of Mokris's fall do not show any pooling of water in the area Mokris claims to have fallen.

14. After Mokris indicated she wanted to write a statement, Graf contacted Christy Williams, an acting supervisor who at that time was working at the Cape Central Post Office. After approximately 20-30 minutes, Williams arrived and spoke with Mokris and Hammond. After talking with Mokris for approximately five to ten minutes, Williams gave directions to a convenient care facility.

15. A U.S. Postal Service database with records beginning in 2014 that contains information relating to incidents/accidents and tort claims does not reflect any other incidents involving a trip, slip, or fall at Cape South.

(Doc. #42, pp. 1-5 (citations omitted; photograph added).)

## II.

Plaintiff first requests that the Court take judicial notice of "page 15 line 1 of the National Vital Statistics Report Volume 69 Number 12 United States Life Tables 2018," which states that the average future life expectancy of a 61-year-old female in the United States is 24.8 years. (Doc. #43, p. 2.) Plaintiff asserts

that because plaintiff is 61 years old, this establishes that her future life expectancy is 24.8 years. (Id.)

"The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "The party requesting judicial notice bears the burden of persuading the court" that it may take judicial notice. United States v. Stinson, No. 614CV1534ORL22TBS, 2016 WL 8488240, at *9 (M.D. Fla. Aug. 26, 2016) (quotation omitted). Judicial notice should be employed sparingly because it "bypasses the safeguards which are involved with the usual process of proving facts by competent evidence." Shahar v. Bowers, 120 F.3d 211, 214 (11th Cir. 1997) (en banc). "In order for a fact to be judicially noticed under Rule 201(b), indisputability is a prerequisite. Since the effect of taking judicial notice under Rule 201 is to preclude a party from introducing contrary evidence and in effect, directing a verdict against him as to the fact noticed, the fact must be one that only an unreasonable person would insist on disputing." United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994) (citation omitted).

The Court will take judicial notice of this portion of the National Vital Statistics Report "for the purpose of establishing

the average life expectancy of a person living in the United States." McRevy v. Ryan, No. CIV.A. 08-508-CG-B, 2009 WL 5214910, at *1 (S.D. Ala. Dec. 18, 2009).  See also, Feldman v. Target Corp., No. 3:19-CV-419-PDB, 2021 WL 2477153, at *5 (M.D. Fla. June 17, 2021) (taking "judicial notice of the life table for white women in the National Vital Statistics Reports").  Taking such judicial notice does not, however, establish Plaintiff's future life expectancy.  Id. at *1 n.1 (noting the report does not conclusively establish any specific individual's life expectancy); Myers v. Porter, No. 3:10-CV-809-J-12TEM, 2010 WL 11623500, at *2 (M.D. Fla. Nov. 4, 2010) ("The Court takes judicial notice that estimated life expectancy for women 18-20 years old in the United States is over 60 years.") (emphasis added).

Plaintiff next requests that the Court take judicial notice of "the United States Postal Service Office of Inspector General Facility Condition Review - Southern Area dated April 28, 2017" (the Audit Report),[1] which details safety issues at post office retail facilities in the southern United States.  (Doc. #43, p. 2.)  The Audit Report reviewed 71 of over 5,400 retail facilities

---

[1] Plaintiff failed to attach the Audit Report to her motion and the link provided by Plaintiff to access the Audit Report online does not work.  However, given the public nature of the Audit Report, the Court located it on the USPS's website: https://www.uspsoig.gov/sites/default/files/document-library-files/2017/SM-AR-17-003.pdf.

in the "Southern Area" for safety violations.  The Southern Area spanned Alabama, Arkansas, Florida, Georgia, Louisiana, Mississippi, Oklahoma, and Texas. (Audit Report, pp. 19-20.)  The Cape South office was not one of the locations reviewed.  (Id.) Plaintiff contends that this document shows that "Defendant did not inspect the premises for safety issues" and "Defendant cannot dispute these facts."  (Doc. #43, p. 2.)

The Court declines to take judicial notice of the Audit Report.  The Audit Report was released over a year before Plaintiff's fall, and obviously examined conditions which pre-dated its release.  Thus, the Audit Report does not purport to address conditions in effect as of the date of the slip and fall. Of the exceptionally small sample (71 facilities out of over 5,400), the Office of Inspector General (OIG) cherry-picked 43 branches to examine.  The OIG "**judgmentally** selected 43 facilities based on referrals from employees and customers, Hotline complaints, or work performed by other OIG teams." (Audit Report, p. 6 (emphasis added).)  Cape South was not among the branches selected, so the Audit Report's contents have nothing to do with the post office facility at issue in this case, and are irrelevant to Plaintiff's fall at the Cape South facility.  E.g., Publix Supermarkets, Inc. v. Santos, 118 So. 3d 317, 320 (Fla. 3d DCA 2013) (quashing overbroad order allowing discovery into all Florida Publix locations because the only relevant location is the

location of the fall).  All the Audit Report shows is that the OIG did not inspect Cape South over a year before the slip and fall. This is not relevant to any material fact in this case.  This portion of Plaintiff's motion is denied.

### III.

Defendant's Motion in Limine seeks to exclude testimony or other evidence from expert William J. Fischer (Fischer) because Plaintiff failed to provide a timely expert report for Fischer. (Doc. #47.)  Fischer is an engineer who was retained to provide expert testimony for Plaintiff.

The general legal principles regarding disclosure of an expert report are well-settled in the Eleventh Circuit.

> Federal Rule of Civil Procedure 26 requires that "[a] party must make [expert witness] disclosures at the times and in the sequence the court orders."  Fed. R. Civ. P. 26(a)(2)(D).  In order to make a proper disclosure, parties must, by the deadline, disclose the identity of their experts "accompanied by a written report."  Fed. R. Civ. P. 26(a)(2)(B).  This written report "must contain a complete statement of all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming them."  Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii).
>
> . . .
>
> If a party violates Rule 26(a) or (e), Rule 37(c) provides for the exclusion of the expert evidence "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); see also OFS Fitel, LLC v. Epstein, Becker and Green, P.C., 549 F.3d 1344, 1363

> (11th Cir. 2008) ("Under Rule 37(c)(1), a
> district court clearly has authority to
> exclude an expert's testimony where a party
> has failed to comply with Rule 26(a) unless
> the failure is substantially justified or
> harmless."). Courts have broad discretion to
> exclude untimely expert testimony—even when
> they are designated as "supplemental" reports.
> See Corwin, 475 F.3d at 1252 ("[A]
> supplemental expert report may be excluded
> pursuant to Federal Rule of Civil Procedure
> 37(c) if a party fails to file it prior to the
> deadline imposed.").

Guevara v. NCL (Bahamas) Ltd., 920 F.3d 710, 717–18 (11th Cir.
2019). "Any party that 'without substantial justification' fails
to disclose [an expert report] is not permitted to use the witness
as evidence at trial 'unless such failure is harmless.'" Prieto
v. Malgor, 361 F.3d 1313, 1318 (11th Cir. 2004) (quoting Fed. R.
Civ. Proc. 37(c)(1)). Factors relevant to the determination of
whether exclusion of a witness is warranted include "the
explanation for the failure to disclose the witness, the importance
of the testimony, and the prejudice to the opposing party if the
witness had been allowed to testify." Romero v. Drummond Co.,
Inc., 552 F.3d 1303, 1321 (11th Cir. 2008).

The record shows that on July 15, 2021, Plaintiff tried to
provide discovery, including expert discovery, to Defendant via
Google Drive. (Docs. ## 47-9; 52-1.) Plaintiff emailed the Google
Drive links to Defendant. Defendant tried to gain access to the
Google Drive, but could not access them due to security features.
(Doc. #47-6.) Defendant provided a link to Plaintiff to upload

the documents to an approved document-share portal, USAfx.  (Id.)
Plaintiff first had issues uploading documents to USAfx.  (Id.)
Documents were successfully uploaded on July 26, 2021.  (Id.)

From the July 15, 2021 Google Drive document list, Plaintiff
highlights a document titled, "1977 Investigative Report.pdf," as
being Fischer's report.  (Doc. #52-1, p. 9.)   In response,
Defendant provides an authenticated "discovery report," which
shows all documents exchanged in this litigation via USAfx,
including Plaintiff's July 26, 2021 upload.  (Doc. #59-6.)   A
review of the discovery report shows that no document titled "1977
Investigative Report.pdf" was ever uploaded to USAfx.  (Id.)[2]
Based on the foregoing, Defendant could not accept service of
Plaintiff's discovery papers via Google Drive, Fed. R. Civ. P. 5,
and Plaintiff was made aware of this.  Plaintiff failed to
otherwise serve Defendant with Fischer's report, such as uploading
it to USAfx.  Ultimately, as directed by the Court, plaintiff
served Fischer's report when filing it on December 2, 2021.  (Doc.
#55.)

---

[2] Plaintiff's Sur-Reply attaches the declaration of Christine
Boutchyard, Plaintiff's counsel's paralegal.  (Doc. #60-3.)
Without explanation or support, and contrary to the emails between
the parties and the discovery report, Boutchyard declares that she
served multiple pleadings via Google to Defendant and that the
Fischer report was uploaded to USAfx on July 2**3**, 2021.  (Id.)

Plaintiff's failure to timely provide Fischer's report to Defendant was at worst a mistake. The parties went back-and-forth on Plaintiff's attempted service, both via Google Drive and USAfx. Plaintiff ultimately uploaded many discovery documents to USAfx, and it appears Fischer's report was missed. Plaintiff's inadvertence is further evidenced by other documents related to Fischer that were uploaded to USAfx, such as "Trial & Depo List for William Fischer.pdf," and "WJF FFE CV2021.pdf." (Doc. #59-2, pp. 31-32.)

Moreover, Plaintiff had disclosed Fischer as an expert in "Plaintiff's Disclosure of Expert Reports," which referenced a Fischer report dated June 1, 2021. (Doc. #47-1). Although Defendant had notice of Fischer and Fischer's Report from that disclosure, Defendant waited until <u>after</u> the discovery cut-off and <u>after</u> Plaintiff responded to its motion for summary judgment to seek to exclude Fischer for failing to timely provide a report. A simple conversation among counsel may have cured the deficiency, or at least led to earlier court intervention. The witness appears to have important testimony. The Court finds no prejudice from the disclosure, even if untimely, which cannot be remedied by means less severe than suppressing the testimony. Defendant's motion in limine is denied.

**IV.**

Defendant's motion for summary judgment argues that Plaintiff cannot establish that Defendant had notice of the dangerous condition at Cape South, and therefore her claim fails as a matter of law.  (Doc. #42.)  Plaintiff's response, in large part, argues that her claim survives summary judgment because Cape South's mode of operation was negligent.  (Doc. #44.)  Defendant replies that negligent mode of operation is no longer a viable theory of recovery under Florida law for Plaintiff's claim.  (Doc. #48.)  In her sur-reply, Plaintiff reiterates her negligent mode of operation argument, but also contends that Defendant's mode of operation demonstrates Defendant's notice of the dangerous condition.  (Doc. #56.)

**A.**

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party."  Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010).  A fact is "material" if it may affect the outcome of the suit under

governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324). "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Hickson, 357 F.3d at 1260 (quoting Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010). However, "if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198

F.3d 815, 819 (11th Cir. 1999) (quoting <u>Warrior Tombigbee Transp.</u> <u>Co. v. M/V Nan Fung</u>, 695 F.2d 1294, 1296-97 (11th Cir. 1983)) (finding summary judgment "may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts.")).

**B.**

The Amended Complaint (Doc. #19) sets forth a premises-liability negligence claim based on a slip and fall on pooled water on the floor of a post office. A negligence claim under Florida law[3] has four elements: "(1) a duty by defendant to conform to a certain standard of conduct; (2) a breach by defendant of that duty; (3) a causal connection between the breach and injury to plaintiff; and (4) loss or damage to plaintiff." <u>Encarnacion v.</u> <u>Lifemark Hosps. of Fla.</u>, 211 So. 3d 275, 277-78 (Fla. 3d DCA 2017) (quotation omitted). "A premises liability claim is a 'negligence claim with the added elements of possession/control of the premises, and notice[4] of the dangerous condition.'" <u>Oliver v.</u> <u>Winn-Dixie Stores, Inc.</u>, 291 So. 3d 126, 128 (Fla. 4th DCA 2020)

---

[3] Plaintiff's claim is brought pursuant to the FTCA. The FTCA provides that liability should be determined "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Because the alleged act or omission occurred in Florida, the Court applies substantive Florida law.

[4] Courts interchangeably use "notice" and "knowledge" when discussing premises liability claims.

(quoting Bechtel Corp. v. Batchelor, 250 So. 3d 187, 200 (Fla. 3d DCA 2018)).

Since 2010 premises-liability claims for slips and falls on transitory foreign substances have been governed by Fla. Stat. § 768.0755, which provides:

> (1) If a person slips and falls on a transitory foreign substance in a business establishment, the injured person must prove that the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it. Constructive knowledge may be proven by circumstantial evidence showing that:
>
> (a) The dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition; or
>
> (b) The condition occurred with regularity and was therefore foreseeable.
>
> (2) This section does not affect any common-law duty of care owed by a person or entity in possession or control of a business premises.

Fla. Stat. § 768.0755 (effective July 10, 2010).

This statute replaced Fla. Stat. § 768.0710, which had allowed "a slip-and-fall plaintiff to recover by showing that a defendant failed to exercise reasonable care in selecting a mode of operation, without showing that the defendant had actual or constructive knowledge of the dangerous condition." LaPosa v. Wal-Mart Stores E., L.P., No. 219CV361FTM99UAM, 2019 WL 2537790, at *1 (M.D. Fla. June 20, 2019) (Steele, J.) (citing Markowitz v.

<u>Helen Homes of Kendall Corp.</u>, 826 So. 2d 256, 259-60 (Fla. 2002) ("[T]he mode-of-operation rule looks to a business's choice of a particular mode of operation and not events surrounding the plaintiff's accident.")). However, "[i]n enacting Fla. Stat. § 768.0755, the Florida legislature specifically repealed the language of Fla. Stat. § 768.0710, which had allowed a plaintiff to establish a claim for relief by showing a negligent mode of operation without the showing of actual or constructive knowledge." <u>Id.</u> at *3.

A Florida appellate court also recently discussed the two statutes:

> Notably, section 768.0755 differs from its predecessor, section 768.0710, by not allowing for liability based solely on the business establishment's general failure to maintain the premises. Instead, section 768.0755 requires the plaintiff prove that the business establishment had actual or constructive notice of the dangerous condition before liability may be found. <u>See</u> <u>Pembroke Lakes Mall Ltd. v. McGruder</u>, 137 So. 3d 418, 424-26 (Fla. 4th DCA 2014) (discussing the differences between sections 768.0755 and 768.0710).

<u>N. Lauderdale Supermarket, Inc. v. Puentes</u>, 4D20-1346, -- So.3d -
-, 2021 WL 6057953, at *3 (Fla. 4th DCA Dec. 22, 2021). "[U]nder section 768.0755, the new governing statute, a jury cannot find liability in a case involving 'transitory foreign substances in a business establishment' unless it finds that the business

establishment had actual or constructive notice." Id. 2021 WL 6057953, at *4 (Fla. 4th DCA Dec. 22, 2021).

Thus, Plaintiff cannot prove her claim based solely on Defendant's negligent mode of operation. Plaintiff's reliance on Khorran v. Harbor Freight Tools USA, Inc., 251 So. 3d 962, 966 (Fla. 3d DCA 2018) is misplaced. Khorran was a case involving a metal object falling off a shelf, and explicitly noted: "We recognize that this (mode of operation theory) no longer holds true in premises liability cases involving a slip and fall on a transitory foreign substance." Id. at 965 n.2 (citing Fla. Stat. § 768.0755 (2010)).[5] See also Kenz v. Miami-Dade Cty., 116 So.3d 461 (Fla. 3d DCA 2013).

Plaintiff's argument that mode of operation survives the enactment of § 768.0755 because it is based in common law is also not persuasive. The Eleventh Circuit (in an unpublished decision) recently considered, and rejected, this same argument:

> Struck also argues that subsection (2) of § 768.0755 provides that a plaintiff may bring a claim for negligent mode of operation. That subsection provides that "[t]his section does not affect any common-law duty of care owed by a person or entity in possession or control of a business premises." Fla. Stat. § 768.0755(2). We interpret the plain meaning of that statute to mean that § 768.0755 does

---

[5] The other negligent mode of operation cases cited by Plaintiff did not consider Fla. Stat. § 768.0755 because the cases were decided, or the falls occurred, before the statute was enacted.

not alter the common law duty that premises owners owe to their invitees, which is the duty "to exercise reasonable care to maintain their premises in a safe condition." Owens v. Publix Supermarkets, Inc., 802 So. 2d 315, 320 (Fla. 2001). However, to prevail on a negligence claim, a plaintiff must also show that the defendant's conduct failed to conform with the legal duty. Williams v. Davis, 974 So. 2d 1052, 1056 Fla. 2007. To interpret the statute in the way Struck suggests would allow for plaintiffs to prove the defendant breached their duty without proving notice, which is at odds with the amendment of Section 768.0755 to include a notice requirement. Therefore, Struck's argument that she can prevail on a negligent mode of operation theory without proving notice is inconsistent with the reading of the current Florida statute for slip-and-fall cases. Accordingly, we reject Struck's argument.

Struck v. Wal-Mart Stores East, LP, No. 21-11012, 2021 WL 5052557, at *4 (11th Cir. Nov. 1, 2021). The Court finds this persuasive on the issue. In sum, § 768.0755 applies to this case, and Plaintiff must show notice, i.e., either actual or constructive knowledge of the dangerous condition.

"Actual knowledge of a dangerous condition exists when a business owner's employees or agents know of or create the dangerous condition." Palavicini v. Wal-Mart Stores E., LP, 787 F. App'x 1007, 1010 (11th Cir. 2019) (citing Barbour v. Brinker Fla., Inc., 801 So. 2d 953, 957 (Fla. 5th DCA 2001)). Defendant argues that the undisputed facts show that it did not have actual knowledge of any dangerous condition. (Doc. #42, pp. 8-11.) Plaintiff does not respond to Defendant's facts and argument

related to actual knowledge, abandoning any claim that defendant had actual knowledge. (See Docs. ## 44, 56.) E.g., Haasbroek v. Princess Cruise Lines, Ltd., 286 F. Supp. 3d 1352, 1358 n.4 (S.D. Fla. 2017) ("When a party fails to address a specific claim, or fails to respond to an argument made by the opposing party, the Court deems such claim or argument abandoned.")

Constructive knowledge may be proven by circumstantial evidence. Fla. Stat. § 768.0755(1). "Constructive notice may be inferred from either: (1) the amount of time a substance has been on the floor; or (2) the fact that the condition occurred with such frequency that the owner should have known of its existence." Oliver, 291 So. 3d at 129 (quoting Delgado v. Laundromax, Inc., 65 So. 3d 1087, 1090 (Fla. 3d DCA 2011)). Only the first factor is relevant in this case.[6]

Defendant cites to the declaration and deposition testimony of Graf, who inspected the floor prior to opening the store at 10:00 a.m. on the day of the fall and who noticed no pooling of water at the store's entrance or other dangerous conditions. (Doc. #42, p. 12.) Defendant argues that Graf's inspection, coupled with Plaintiff arriving between 10:00 a.m. and 10:15 a.m. on the

---

[6] The record on summary judgment indicates that Defendant had no knowledge of other slip and fall incidences at Cape South before (or after) Mokris' fall. (Doc. #42-4, ¶ 6; Doc. #42-12.) Thus, a reasonable inference of constructive notice based on frequency of the condition cannot be made.

day of the fall, shows that Plaintiff cannot establish that a dangerous condition existed for enough time to infer constructive knowledge.  In response, Plaintiff cites circumstantial evidence, including testimony that the fall happened on a rainy day and photographs after the incident showing a wet shoe print and the entrance rug (which would presumably cover wet tiles) being too far away from the door. (Doc. #44, pp. 8-9.)  Plaintiff also cites the Accident Investigation Worksheet created after the incident, which describes conditions as rainy and wet.  (Doc. #44-2.)

As summarized in Vargas v. Dolphin Mall Associates, LLC, 3D20-1027, -- So.3d --, 2021 WL 6057079, at *1 (Fla. 3d DCA Dec. 22, 2021), Florida appellate courts have upheld findings of a lack of constructive notice where the substance was on the floor for too short a time.

> Dominguez v. Publix Super Mkts., Inc., 187 So. 3d 892, 894 (Fla. 3d DCA 2016) ("In transitory foreign substance cases, courts look to the length of time the condition existed before the accident occurred."); Gaidymowicz v. Winn-Dixie Stores, Inc., 371 So. 2d 212, 214 (Fla. 3d DCA 1979) (concluding that, with only one minute of actual notice and insufficient evidence of constructive notice regarding the spill, the store did not have sufficient time to correct the dangerous condition and therefore could not be liable); De Los Angeles v. Winn-Dixie Stores, Inc., 326 So. 3d 811, 812 (Fla. 3d DCA 2021) (affirming summary judgment finding the store did not have actual or constructive notice of the dangerous condition where the customer had been in an aisle alone for three to five minutes before slipping and an employee had checked the aisle

five minutes before the incident occurred);
Walker v. Winn-Dixie Stores, Inc., 160 So. 3d
909, 912 (Fla. 1st DCA 2014) (affirming
summary judgment in favor of the grocery store
and noting that, at most, the substance was on
the floor no more than four minutes before the
fall, which was insufficient to satisfy the
statute's actual or constructive notice
requirement).

All of these cases, however, involve shorter lengths of time than

has been established in this case.  Graf inspected the premises

sometime before opening the location at 10:00 a.m. and Plaintiff

arrived shortly thereafter, no later than 10:15 a.m.  The potential

of an almost fifteen-minute duration distinguishes this case from

those cited above.  And, although Defendant cites cases with longer

durations of time between an inspection and a fall (Doc. #42, p.

13), Defendant has not shown that the undisputed material facts in

this case negate a reasonable inference of constructive notice

based upon circumstantial evidence as allowed by Fla. Stat. §

768.0755(1)(a).

    Accordingly, it is now

    **ORDERED:**

1.   Defendant's Motion for Summary Judgment (Doc. #42) is
**DENIED**.

2.   Plaintiff's Amended Motion for Judicial Notice (Doc.
#43) is **GRANTED in part** and **DENIED in part**, as stated
above.

3.   Defendant's  Motion  in  Limine  to  Preclude  Expert
Testimony of Fischer (Doc. # 47) is **DENIED**.

**DONE and ORDERED** at Fort Myers, Florida, this ___29th___ day of
December, 2021.

_____

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record